### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **REBECCA M. BARNETTE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:04-0767** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### M E M O R A N D U M   O P I N I O N

     This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's Applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. Plaintiff has filed a Motion for Judgment on the Pleadings and Memorandum in Support. (Document Nos. 12 and 13.) Defendant has filed a Motion for Judgment on the Pleadings and Brief in Support. (Document Nos. 15 and 16.) Plaintiff has filed a Reply to Defendant's Motion for Judgment on the Pleadings. (Document No. 20.) Both parties have consented in writing to a decision by the United States Magistrate Judge.

     The Plaintiff, Rebecca M. Barnette, formerly Rebecca M. Welch (Tr. at 73 - 76.), (hereinafter referred to as "Claimant"), filed an Application for DIB on March 1, 2000, alleging disability as of December 23, 1999, due to "arthritis/anxiety attacks/depression/seizures/acid reflux/rapid heart rate." (Tr. at 65 - 67, 82.) The claims were denied initially and upon reconsideration. (Tr. at 45 - 47, 56 - 58.) On June 13, 2001, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 59 - 60.) The hearing was held on October 23, 2002, before the Honorable Steven

DeMonbreum. (Tr. at 500 - 618.) By Decision signed by ALJ DeMonbreum on December 19, 2002, and released by the Clerk on January 29, 2003, ALJ DeMonbreum determined that Claimant was not entitled to benefits. (Tr. at 15 - 32.) The ALJ's Decision became the final decision of the Commissioner on July 15, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 7 - 8.) On July 26, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[1] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent

---

[1] These Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

> to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ found that Claimant met "the nondisability requirements for a period of disability and Disability Insurance Benefits . . . and was insured for Title II benefits through March 31, 2002." (Tr. at 30, Finding No. 1.) The ALJ then determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful since her alleged onset of disability. (Tr. at 30, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from an impairment or impairments considered "severe" under the Regulations as follows:

---

indication of a continued need for such an arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06, provides essentially the same framework for determining the severity of anxiety related disorders.

"degenerative joint disease, degenerative arthritis of the lumbar spine, chronic cervical and lumbar strains, fibromyalgia, muscle tension and migraine headaches, irritable bowel syndrome, a depressive disorder, a generalized anxiety disorder, and a panic disorder." (Tr. at 31, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 31, Finding No. 4.) The ALJ then found as follows respecting Claimant residual functional capacity:

> The claimant has the following residual functional capacity: to perform medium work, with lifting up to 40 pounds occasionally and 20 pounds frequently, and to perform jobs not precluded by moderate limitations in her ability to carry out detailed instructions, moderate limitations in her ability to maintain attention and concentration for extended periods, and moderate limitations in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.

(Tr. at 31, Findings No. 7.) The ALJ concluded that Claimant could not return to her past relevant work. (Tr. at 31, Finding No. 8.) The ALJ concluded based upon the testimony of vocational expert Phyllis Shapero that jobs existed in significant numbers in the regional and national economies which Claimant could perform including cleaner/housekeeper and cashier/clerk. (Tr. at 31, Finding No. 13.) On this basis, benefits were denied. (Tr. at 32.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 19, 1952, and was 50 years old at the time of the administrative hearing, October 23, 2002. (Tr. at 65, 506, 401 - 402.) Claimant completed the eleventh grade, obtained a GED and had vocational training in health care. (Tr. at 506 - 511.) In the past, she worked as a retail sales associate, a zoner and a CNA. (Tr. at 83, 512 - 535.)

The Medical Record

The Court has reviewed the medical evidence of record and will discuss it in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Seeking judgment on the pleadings or remand, Claimant contends that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in finding that Claimant was not totally credible in testifying about the limitations which she experienced as a consequence of her impairments, (2) the ALJ erred in finding at step four and five of the sequential analysis that Claimant was unable to perform her past relevant work and then finding that work was available

7

which she could perform as a cashier/clerk, which was one of her past jobs and (3) the ALJ erred in his hypothetical question to the vocational expert by not including all of Claimant's impairments. (Document No. 13, pp. 7 - 12.) Claimant asserts that Dr. Riaz has treated her for depression since February 25, 1999, Dr. Bird has treated her for anxiety, degenerative joint disease and muscle problems since 1995, Dr. Chand has treated her for degenerative joint disease since August, 2001, and she has suffered from irritable bowel syndrome since 1995. (Id., pp. 7 - 8.) She states that she had trouble sleeping, decreased energy and loss of appetite. (Id., p. 7.) Claimant states that "[t]he ALJ found that [she] does have medically determinable impairments, such as degenerative joint disease, fibromyalgia and migraine tension headaches that are capable of causing some degree of pain, but not to the extent alleged by the claimant to render her totally disabled from most activities." (Id., p. 8.) Claimant states further that "[a]ccording to the opinion in the decision of Hill v. Commissioner of Social Security, 49 F.Supp.2d 865 (S.D.W.Va. 1999), this case should be 'remanded for the administrative law judge to determine whether the claimant had objectively identifiable medical impairments that could reasonably cause the pain of which he complained and to reconsider and to indicate explicitly the weight accorded various reports in the record.'" (Document No. 13, p. 8.) Claimant emphasizes that Dr. Riaz, one of her treating physicians, stated that she was unable to work due to her impairments and she was laid off from her last job at Sears because she was unable to perform simple job duties like operating the cash register and marking down merchandise. She notes that her supervisor at Sears provided an Affidavit stating that Claimant could not perform her job as a cashier because she was nervous. (Id., p. 9.) Respecting the ALJ's hypothetical question to the vocational expert, Claimant appears to contend that the ALJ adopted the expert's response to a hypothetical question which did not include all of her limitations and did

8

not permit the expert to consider the limiting affect(s) Claimant's medications would have upon her ability to function. (Id., pp. 9 - 12.)

The Commissioner contends in seeking judgment on the pleadings that "the ALJ properly evaluated all of the evidence of record, properly relied upon the medical expert's testimony regarding Plaintiff's limitations, and properly relied upon the vocational expert's testimony based upon a proper hypothetical question supported the step five decision [sic]." (Document No. 16, p. 9.) The Commissioner states that the ALJ assessed Claimant's credibility properly pursuant to applicable regulations and his decision was supported by the testimony of Dr. Kang who testified as a medical expert at the administrative hearing. (Id., p. 11.) The Commissioner further states that the ALJ properly rejected Dr. Riaz' opinion that Claimant was disabled. (Id., pp. 12 - 13.) The Commissioner disputes Claimant's assertion that the matter must be remanded for reconsideration of the evidence. (Id., p. 13.) Finally, the Commissioner contends that the ALJ properly considered all of Claimant's limitations in addressing his hypothetical question to the vocational expert. (Id., pp. 14 - 16.)

In her Reply to the Commissioner's Motion for Judgment on the Pleadings (Document No. 20.), Claimant disputes the Commissioner's assertion that substantial evidence supported the ALJ's conclusion that Claimant retained the capacity to perform other work.

## ANALYSIS

1. Pain/Symptoms/Credibility Analysis

A two-step process is used to determine whether a claimant is disabled by symptoms/pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the symptoms/pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b)

(1999); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the symptoms/pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause symptoms/pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of symptoms/pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (1999). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> > (i) Your daily activities;
> >
> > (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> >
> > (iii) Precipitating and aggravating factors;
> >
> > (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> >
> > (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (1999).

>> SSR 96-7p repeats the two-step regulatory provisions:
>
> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms,
> the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

It is clear that the ALJ followed the two-step process in considering the evidence pertaining to Claimant's symptoms/pain/credibility and complied in with the ruling of the Court in Hill with respect to Claimant's physical impairments and in form or by implication with respect to her mental impairments. After concluding that Claimant had severe impairments as stated above, the ALJ stated the standard for considering evidence respecting Claimant's symptoms/pain/credibility and stated that "the claimant does not have any medically determinable physical impairment capable of causing all of the pain and other limitations she alleges. The claimant does have medically determinable impairments . . . that are capable of causing some degree of pain, but not to the extent alleged by the claimant to render her totally disabled from most activities." (Tr. at 26.) The ALJ was not as clear in indicating that he reached the same conclusion respecting symptoms deriving from Claimant's

mental impairments, but it is clear that he did so from his discussion of the limitations which Claimant alleged and the evidence either supporting or refuting her allegations.[3] The Court therefore finds no error in the ALJ's symptoms/pain/credibility analysis as Claimant asserts and further concludes based upon a thorough examination of the record that the ALJ's findings respecting Claimant's symptoms/pain/credibility are supported by substantial evidence.

2. The ALJ's Steps Four and Five Analysis and Hypothetical Questioning

In submitting her application for DIB, Claimant completed a Work History Report. (Tr. at 115 - 121.) She indicated that she worked as a clerk or sales associate from September through December, 1999, and described her job as "use the cash register." (Tr. at 119.) She indicated that the heaviest weight she was required to lift and frequently lifted was ten pounds. (Id.) Claimant testified at the administrative hearing that she last worked at Sears as a retail sales associate or a salesperson in the ladies department from approximately September through December, 1999. (Tr. at 512.) She stated that her job involved, among other things, lifting bundles and boxes of clothing weighing fifty pounds or more. (Tr. at 517, 520.) At the administrative hearing, the ALJ asked the vocational expert how the jobs of CNA and sales clerk were classified in the Dictionary of Occupational Titles, and she stated respecting the sales clerk position that "[t]here are many

---

[3] In Perkins v. Apfel, 101 F.Supp.2d 365 (D. Md. 2000), the Court held that an ALJ's failure to make an explicit finding on the threshold question did not constitute reversible error because the ALJ provided substantial evidence to support his overall pain and credibility determination that the claimant's subjective complaints of pain were not entitled to full credibility and that she was limited to sedentary work. Perkins, 101 F.Supp.2d at 373. In Ketcher v. Apfel, 68 F.Supp.2d 629, 651 (D. Md. 1999), the ALJ did not explicitly find that the claimant's pain could result from the medically determined impairments, but the Court found that "it is clear that the ALJ made this determination since he noted that the impairments were 'severe' and affected his functional capacity." Ketcher, 68 F.Supp.2d at 650-51. But see Hill v. Commissioner of Social Security, 49 F.Supp.2d 865 (S.D. W. Va. 1999) (Hallanan, S.D.J.).

salesclerk listings in the DOT, some light and some medium." (Tr. at 594.)[4]

At step four of the sequential analysis, the ALJ found that Claimant's past relevant work as a CNA required heavy exertion and her work as a sales associate required medium exertion. (Tr. at 29.) The ALJ determined that Claimant was unable to perform her past relevant work. (Tr. at 29 and 31, Finding No. 8.) The ALJ stated Claimant's residual functional capacity as he found it as follows:

> The claimant has the following residual functional capacity: to perform medium work, with lifting up to 40 pounds occasionally and 20 pounds frequently, and to perform jobs not precluded by moderate limitations in her ability to carry out detailed instructions, moderate limitations in her ability to maintain attention and concentration for extended periods, and moderate limitations in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.

(Tr. at 28 and 31, Findings No. 7.) Thus, the ALJ determined that Claimant could not perform her past relevant work at the medium exertional level but could nevertheless perform a significant range of work at that level.[5] The ALJ stated that "[t]he claimant's ability to perform all or substantially all of the requirements of medium work is impeded by additional exertional and/or non-exertional

---

[4] The undersigned has examined the Dictionary of Occupational Titles with respect to sales clerk listings (numbers 261.351-010 through 261.357-074 including 261.357-038 which pertains to a sales representative respecting women's and girl's apparel) and has found that they are all are categorized light from a strength standpoint as is the "cashier, clerk type job" number 209.562-010) identified by the vocational expert as one which Claimant could perform. (Tr. at 596.) The vocational expert also found that Claimant could perform cleaner/housekeeper or janitor jobs listed in the DOT. (Tr. at 595 - 596.) She testified that the cleaner/housekeeper jobs were "[g]enerally in the light category, at times going into the medium category . . .." (Tr. at 596.) The undersigned has examined the DOT respecting these jobs and has found that some are categorized light and some are medium.

[5] "Medium work" is defined at 20 C.F.R. § 404.1567(c) and 416.967(c) as working involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing 25 pounds. If some one can do medium work, we determine that he or she can also do sedentary and light work."

limitations." (Tr. at 30.) Apparently, the ALJ accepted Claimant's testimony indicating that her job at Sears required her to do work at the medium exertional level and, finding her unable to perform the 50 and 25 pound lifting requirements of medium work and having other limitations, determined that she was nevertheless able to perform less than the full range of medium work. The Court can find no error in the ALJ's step four analysis and finds it supported by substantial evidence.

At step five of the sequential analysis, the claimant is deemed to have made a *prima facie* case that she is disabled, and the Commissioner must demonstrate, if she can, that jobs exist in the regional and national economies which Claimant can perform. To this end, the ALJ will often seek the opinion of a vocational expert. To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

The ALJ posed the following hypothetical question to the vocational expert (Tr. at 594 - 595):

> I want you to assume a hypothetical individual the same age, education and past

> work experience as the claimant who has the following residual capacity. Can occasionally lift up to, lift and, or carry up to 40 pounds, frequently lift and, or carry up to 25 pounds. Could stand and, or walk with normal breaks for a total of about six hours in an eight-hour day. Can frequently sit, stand, walk, reach, bend, squat and can occasionally to frequently kneel, and can frequently crawl and climb. This individual has additional non-exertional mental limitations as follows, a moderately limited, as defined as moderate limitation in this area but still overall able to function satisfactorily. Is moderately limited in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods of time, and the ability to complete a normal workday or work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unusual number and length of rest periods. And, again, those are moderate limitations.

The vocational expert stated that such an individual could perform jobs in the light and medium categories such as janitorial jobs and cashier, clerk type jobs. (Tr. at 595 - 596.) After discussion between the ALJ, Claimant's counsel and the vocational expert, Claimant's counsel referred to the March 5, 1999, report of Dr. Riaz and Dr. Riaz' opinion that "[p]atient has a combination of emotional and physical problems which makes her incapable of gainful employment. She will be unable to interact appropriately with her co-workers and supervisors. She will be unable to perform routine repetitive tasks at a sustained level. She is not a suitable candidate for vocational rehabilitation." Claimant's counsel also referred to the February 25, 1999, report and findings of psychologist C. G. Demopoulos and the July 25, 2002, report of psychologist Robert L. Williams.[6] (Tr. at 606 - 608.) The ALJ then presented additional considerations to the vocational expert hypothetically as follows (Tr. at 608 - 609.):

> – hypothetical. Ms. Shapero, I want you to assume again the same physical limitations that I've indicated to you, but also assume that she's unable to interact appropriately with her coworkers and supervisors, she is unable to do – perform

---

[6] Dr. Riaz' March 5, 1999, report is in the record at pp. 351 -353. Mr. Demopoulos' February 25, 1999, report is in the record at pp. 365 - 366. Mr. Williams' report is in the record at pp. 437 - 442.

>routine, repetitive tasks at the same level. She is not a suitable candidate for vocational rehabilitation, however, she's capable of managing her own benefit.

The vocational expert stated that no jobs existed. Claimant's counsel then asked the vocational expert to consider a list of Claimant's pain and psychiatric medications and the effects taking the medications might have on her functional ability. (Tr. at 609 - 614.) Among other things, the expert testified that Claimant's employability could be affected "depending on the amount they're taking and the length of time they're taking it." and employers tend to avoid hiring individuals who are known to be taking those types of medications. (Tr. at 613.)

Claimant appears to be contending that in considering the testimony of the vocational expert, the ALJ did not adopt the limitations specified by Dr. Riaz as discussed above, *i.e.*, that she is unable to interact appropriately with her coworkers and supervisors and to perform routine, repetitive tasks. The ALJ addressed Dr. Riaz' finding that Claimant could not interact appropriately with her co-workers in his rating analysis respecting her ability to maintain social functioning stating that "[a]lthough Dr. Riaz advised that the claimant would be unable to interact appropriately with coworkers or supervisors, the claimant advised that she likes being around people, and she denied having any problems getting along with others. Moreover, her interaction with Ms. Wyatt was within normal limits. The Administrative Law Judge has concluded that on balance, the claimant has only moderate limitations in this area. For the reasons explained below, the undersigned is not bound by the opinions of the claimant's treating physicians, including Dr. Riaz." (Tr. at 23.) The ALJ stated that he "finds Dr. Riaz' opinion to be both not supported by acceptable clinical and laboratory techniques, and inconsistent with other substantial evidence in the case record. In particular, the independent consultative examination by psychologist Wyatt failed to find the severity of mental impairments opined by Dr. Riaz." (Tr. at 27.) The ALJ stated in his decision that he did not "give

17

controlling weight to Dr. Riaz' opinion as to the claimant's mental condition. Some weight has been given to Dr. Riaz' opinions, but greater weight is given to the opinions of the independent medical expert and the medical consultants retained by the State agency to review the medical records." (Tr. at 28.) The ALJ also referred to the discharge summary from Claimant's January, 2000, hospitalization for depression. (Tr. at 28.) The Court finds that the ALJ adequately explained why he did not give controlling weight to some of the opinions of Dr. Riaz, Claimant's treating psychiatrist, and that his findings are supported by substantial evidence of record. Dr. Riaz found Claimant's mental impairments and symptoms more severe than other examining and treating sources and it does not appear that observations and test results support Dr. Riaz' assessments. The Court notes that Mr. Demopoulos' findings respecting Claimant's mental status (Tr. at 366.) are generally equivalent to those of Ms. Wyatt (Tr. at 243.). Accordingly, the Court finds that the ALJ did not commit error in rejecting the additional limitations as contained in Dr. Riaz' March 5, 1999, and March 27, 2000, reports (Tr. at 342 - 343, 351 - 353.), and his decision in this regard is supported by substantial evidence and in conformity with applicable law and regulations.

Claimant further alleges that the ALJ did not permit the vocational expert to consider what side-effects her medications had upon her residual functional capacity. The Court finds that the ALJ considered Claimant's medications and her subjective statements respecting their effects initially in summarizing the medical evidence. (Tr. at 17 - 20.) The Court finds that the ALJ noted the requirement that he evaluate "the type, dosage, effectiveness, and other adverse side-effects of any medication[.]" (Tr. at 25.) It does not appear, however, that the ALJ made any specific findings respecting the general side-effects of prescription drugs which Claimant was taking on Claimant's ability to work. The Court finds no error in this. The Court does not find evidence in the record that

18

Claimant experienced adverse side-effects from the medications which she was taking. The ALJ's statements respecting the medications which Claimant was taking and her subjective reports about their effectiveness are accurate. The Court finds therefore that the ALJ's consideration of the evidence respecting Claimant's medications was appropriate and in conformity with applicable law and regulations.

After a careful examination of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's decision is **AFFIRMED**, and  this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 29, 2005.

R. Clarke VanDervort
United States Magistrate Judge